VIRGIL A. PLACE AND MARY J. PLACE, PLAINTIFFS-
APPELLANTS, v. THE BOARD OF ADJUSTMENT OF THE
BOROUGH OF SADDLE RIVER AND LOUIS H. PERRIN,
BUILDING INSPECTOR OF THE BOROUGH OF SADDLE
RIVER, DEFENDANTS-RESPONDENTS.

Argued March 17, 1964—Decided May 18, 1964.

*Mr. Bruce F. Banta* argued the cause for plaintiffs-appellants (*Messrs. Winne & Banta,* attorneys).

*Mr. William W. Evans, Jr.,* argued the cause for defendants-respondents (*Messrs. Evans, Hand, Evans, Allabough & Amoresano,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The Board of Adjustment of the Borough of Saddle River denied plaintiffs' application for a variance under *N. J. S. A.* 40:55–39(c) and (d) for construction of a fallout shelter which violated the 40-foot side yard requirements of the zoning ordinance of the borough.[1] The plaintiffs filed a complaint against the board and the building inspector of the borough in the Superior Court, Law Division, requesting a declaration that the shelter was not a structure within the meaning of the ordinance and alternatively alleging that denial of the variance was improper. That court entered judgment for the defendants, and plaintiffs appealed to the

---

[1] The Zoning Ordinance provides, in pertinent part:
"Section 2. Definitions

\*     \*     \*     \*     \*     \*     \*

(I) SIDE YARD. A side yard is an open unoccupied space within the lot between a side lot line and the parts of the building, structure or outbuilding nearest thereto. Such side yard shall extend on both sides of the lot through from the street line to the rear line of said lot. Section 6. 'A' Residence District

\*     \*     \*     \*     \*     \*     \*

(F) SIDE YARDS. Within any 'A' residence district two side yards are required, each of a minimum width of forty (40) feet measured from the side lot line. No building, garage, outbuilding, swimming pool or other structure shall be erected within such forty (40) foot side yard."

Appellate Division. The matter was certified by this court prior to argument there.

The plaintiffs are the owners of a home and lot approximately two acres in area in the "A" residence district of the Borough of Saddle River. On November 25, 1961, without first obtaining a building permit, they commenced construction of a fallout shelter consisting of an Armco steel cylinder to be set into a trench, covered with several feet of soil and landscaped on top. On November 27, when the floor of the shelter was in place and part of the sides were up, the building inspector visited the premises and told the plaintiffs that a building permit was required for the construction of the shelter. He alerted them to the possibility of error in the location of the shelter and requested that the measurements from the side yard line be rechecked. Plaintiffs remeasured the location of the shelter from stakes which had been pointed out to them by a prior owner as marking the side lot line. On November 29 plaintiffs filed sketches and an application for a building permit which located the shelter 45 feet from the side line, and a permit was forthwith issued. Subsequently the building inspector again informed the plaintiffs that he had received complaints that the shelter was too close to the side lot line and requested that the location of the shelter be verified. On December 6, 1961 plaintiffs wrote the inspector informing him that they had again remeasured the side line and that the shelter was 40 feet from the line. In January plaintiffs were informed that a survey conducted for the next-door neighbor indicated the shelter was in violation of the side yard requirement of the ordinance, and plaintiffs immediately requested a resurvey from their surveyors. This resurvey was made in February and confirmed that the location of the shelter, which was then 7/8ths completed, violated the ordinance. The resurvey showed that the rear stake from which plaintiffs had measured was incorrectly located. The borough engineer also surveyed the land on March 16 and located the shelter 25 feet from the side line. The building inspector then advised the plaintiffs that the shelter vio-

lated the zoning ordinance and that it must either be removed or a variance obtained. Plaintiffs thereupon applied to the board of adjustment for a variance. Following a hearing, the variance was denied on the ground that undue hardship had not been shown.

Plaintiffs initially contend that their fallout shelter is not a building or structure within the meaning of the zoning ordinance and that therefore no variance was required. Defendants argue that the word "structure" used in the ordinance is broad enough to encompass fallout shelters, that it was the intention of the drafters to control the location of all structures, and that the ordinance should be interpreted as encompassing fallout shelters.

The aim of the court in construing ordinances, like statutes, is to determine the legislative intent. Zoning ordinances are to receive a reasonable construction and application, and under the *Constitution of 1947, Art.* IV, § VII, *par.* 11, they are to be liberally construed in favor of the municipality. "The will of the lawgiver is to be gathered from the object and nature of the subject matter, the contextual setting, and the mischief felt and the remedy in view." *San-Lan Builders v. Baxendale,* 28 *N. J.* 148, 155 (1958). When the Saddle River ordinance was adopted in 1930 fallout shelters were virtually unknown and were not within the specific contemplation of the governing body. But, "it is an established rule of statutory construction that a statute written in general terms will be given prospective application to situations unknown or nonexistent at the time of its enactment which are within its general purview and scope where the language fairly includes them." *Safeway Trails, Inc. v. Furman,* 41 *N. J.* 467, 477 (1964). Our inquiry is thus twofold: Are fallout shelters within the general purview and scope, or purpose, of the ordinance, and does the word "structure" fairly include them?

There can be little doubt that in its broad sense the word "structure" includes a fallout shelter. In *Moore v. Bridgewater Township,* 69 *N. J. Super.* 1, 22 (*App. Div.*

1961), "structure" is broadly defined as any production or piece of work artificially built up or composed of parts and joined together in some definite manner. And we note that the Legislature in providing certain tax exemptions for fallout shelters used the word "structure" in defining a fallout shelter. *N. J. S. A.* 54:4–3.49. Thus the word "structure" in the zoning ordinance should be construed to encompass fallout shelters if they are within the general purview and scope of the ordinance.

The purpose of the ordinance is to regulate the use of land and the location of structures thereon. Within the "A" residence zone two side yards are required, each of a minimum width of 40 feet, and no building, garage, outbuilding, swimming pool or other structure may be erected within the required side yard. Side yard restrictions provide open, unoccupied space for several purposes, including rest and recreation, and they enhance the appearance of the neighborhood and thus conserve the value of property. See *Loveladies Property etc. v. Barnegat City,* 60 *N. J. Super.* 491. 499 (*App. Div.* 1960). Any structure which interferes with the open, unobstructed space requirement would be within the intendment of and prohibited by the restriction. Does the plaintiffs' shelter violate the legislative intention to provide open, unobstructed space?

The shelter is a steel cylinder 24 feet long, 12 feet wide and 8 feet high. While part of it is beneath the ground level, it is apparent from the testimony and the photographs in evidence that much of it extends above the normal ground level. It is, however, covered with soil and landscaped on top. In other words, as described in the record, it gives the appearance of "a small quonset hut that is covered with earth." We think that this artificial addition to the land which extends substantially above the pre-existing ground level, even though covered with soil, interferes with the open, unobstructed space contemplated by the zoning ordinance and is therefore a structure within the intendment of the ordinance.

Since we find that the plaintiffs' shelter is a structure within the intendment of the ordinance, and since that structure violates the 40-foot side yard requirement, the determinative issue in the case is whether the board of adjustment improperly denied the plaintiffs' application for a variance.

*N. J. S. A.* 40:55–39, as amended, provides that the board of adjustment shall have the power under subsection (c):

"Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship; *provided, however*, that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use."

and under subsection (d) to:

"Recommend in particular cases and for special reasons to the governing body of the municipality the granting of a variance to allow a structure or use in a district restricted against such structure or use. Whereupon the governing body or board of public works may, by resolution, approve or disapprove such recommendation. If such recommendation shall be approved by the governing body or board of public works then the administrative officer in charge of granting permits shall forthwith issue a permit for such structure or use.

No relief may be granted or action taken under the terms of this section unless such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance." (*L.* 1953, *c.* 288, *p.* 1825, § 1)

The board of adjustment ruled that a fallout shelter was a permitted accessory use in a residence district under the zoning ordinance, and we accept its interpretation of the ordinance. Therefore, subsection (d), which permits the board to recommend to the governing body in certain instances the granting of a variance to allow a structure or use in a district restricted against such structure or use does not apply. *Deer-*

*Glen Estates v. Bd., etc., Borough of Ft. Lee,* 39 *N. J. Super.* 380, 384 (*App. Div.* 1956). The board found that the plaintiffs had presented no facts establishing the exceptional narrowness, shallowness or shape of this property or exceptional topographic conditions of the property or any other extraordinary condition which would result in undue hardship to the plaintiffs if the side yard restriction were enforced. Accordingly, it held that the plaintiffs had not demonstrated undue hardship within the meaning of *N. J. S. A.* 40:55-39(c).

█ If this finding is justified by the record made before the board, we should affirm its denial of a variance, since the board's power to grant a variance from strict application of side yard restrictions is limited to situations in which one of the above exceptional conditions of the property has been shown to exist and has resulted in undue hardship upon the owner. *Deer-Glen Estates v. Bd., etc., Borough of Ft. Lee, supra,* 39 *N. J. Super.,* at *p.* 384.

█ The record clearly shows that the plaintiffs could readily have complied with the side yard provisions of the ordinance. The physical features of the land in no way precluded them from placing their shelter in a permitted area on their 2-acre lot. The plaintiffs requested the variance merely to avoid the consequences of their mistake in measuring the location of the side line.

█ Plaintiffs contend that they will suffer undue hardship if required to move the shelter. They expended approximately $3,000 in the construction of the shelter and assert that it will cost more than that amount to move the shelter. The board argues that financial hardship is not a reason recognized in law for granting a variance. But in our view this argument is irrelevant in this case because the hardship to which subsection (c) of the statute refers must arise by reason of one of the specified conditions of the property. *Cf. Russell v. Tenafly Bd. of Adjustment,* 31 *N. J.* 58 (1959) ; *Ardolino v. Board of Adjustment of Borough of Florham Park,* 24 *N. J.* 94 (1957). Hardship created by the owner which is unre-

lated to the physical characteristics of the land is not contemplated by subsection (c) and· accordingly is not sufficient grounds for the granting of a variance in this case.

Plaintiffs argue that the topography of their land favors the present location of the shelter. They point out that it has been placed in' a swampy area resulting in an improvement of the property, which they say is desirable from an aesthetic viewpoint. This may be so, but the statute does not permit the board to grant a variance whenever the topography of the particular land "favors" a given location for a structure, but only when the topography creates practical difficulties in complying with the ordinance. Plaintiffs have advanced several other reasons which they contend justify the grant of a variance, namely, strong public policy favors the construction of fallout shelters; the building inspector failed to verify the location of the shelter; the purpose of zoning would be furthered by the grant; and they were unable to purchase adjacent land in order to comply with the ordinance. We are satisfied that none of these reasons meets the statutory prerequisites for the exercise of the board's power to grant a variance.

One further matter requires comment. G. Tapley Taylor is the Mayor of Saddle River and is also a member of the bar. He appeared before the board of adjustment at the hearing on this matter on behalf of a private client who objected to the grant of the variance. We agree with the plaintiffs that the appearance of the mayor was patently improper. *Cf. R. R.* 1:26-3(d). The mayor appoints the members of the board of adjustment with the advice and consent of the council. Saddle River Zoning Ordinance § 10(B). In *Aldom v. Borough of Roseland,* 42 *N. J. Super.* 495, 500–501 (*App. Div.* 1956), Judge (now Justice) Francis likened the relationship of a municipal officer and the citizens to that of a trustee and his *cestui que trust,* stating that the law demands exclusive loyalty and tolerates no mingling of self-interest from such trustees. By appearing on behalf of a private client, the mayor voluntarily created a pecuniary personal

interest which conflicted with the fiduciary duty he owed to all members of the public. The appearance of a mayor for a private client who objects to the grant of a variance has the likely capacity to influence the action of the board, and in any event creates doubt in the public mind as to the impartiality of the board's action. *Cf. Van Itallie v. Franklin Lakes,* 28 *N. J.* 258, 268 (1958)*.* And if our decision in this case required a review of the board's exercise of its discretion, we would not hesitate to set aside its decision because of the mayor's appearance. However, since the plaintiffs presented no evidence demonstrating that their alleged hardship existed by reason of the physical character or other extraordinary condition of their property, the board was required by *N. J. S. A.* 40:55–39(c) to deny the application. And since it is apparent from the record that no such evidence could be presented, no purpose would be served by setting aside the order of the board.

The judgment of the Superior Court, Law Division, is affirmed.

WEINTRAUB, C. J., and JACOBS and FRANCIS, JJ., concurring in result.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.