935 A.2d 842 (2007)
396 N.J. Super. 608
Dr. Jason COHEN, Plaintiff-Respondent,
v.
BOARD OF ADJUSTMENT OF the BOROUGH OF RUMSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 2007.
Decided December 6, 2007.
*843 Bernard M. Reilly, Red Bank, argued the cause for appellant (Dowd and Reilly, attorneys; Mr. Reilly, on the brief).
Michael R. Leckstein, Little Silver, argued the cause for respondent (Leckstein & Leckstein, LLC, attorneys; Marc A. Leckstein, on the brief).
Before Judges SKILLMAN, WINKELSTEIN and YANNOTTI.[1]
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Defendant, Board of Adjustment of the Borough of Rumson (the Board), appeals from a Law Division order that granted plaintiff, Dr. Jason Cohen, a variance, and reversed the Board's decision denying the variance. We reverse the provision of the order that grants the variance, but do not reinstate the Board's decision. Instead, we remand to the Board for further proceedings.
Plaintiff owns a 1.7-acre parcel of real property in the Borough of Rumson (the Borough). The property is zoned R-1 residential. In 2004, plaintiff proposed razing the then-existing house on the property and constructing a new one. He hired an architectural firm, Monteforte Architectural Studios, to design the new house. On November 29, 2004, Monteforte submitted plans that appeared to, but did not, conform to all of the zoning ordinance's requirements. Based on those plans, the Borough issued a building permit.
Plaintiff replaced Monteforte with new architects, Sasson & Rachlin. Sasson changed the plans, which, like the prior plans, appeared to conform to the Borough's zoning requirements, but did not. The zone permitted 6013.7 square feet of building coverage, and the house covered 6764 square feet. The house also failed to conform to the zoning ordinance's lot coverage *844 requirements of 16,178.9 square feet; as proposed, total lot coverage was 16,908 square feet. Nonetheless, the Borough issued a building permit because the plans on their face appeared to conform to the zoning requirements and plaintiff began construction. Neither Monteforte nor Sasson had obtained or reviewed the Borough zoning ordinance before preparing the plans.[2]
During construction, after receiving complaints from a member or members of the Borough Planning Board about the size of the house, the Borough engineer reviewed the architectural plans, grading plan, and survey, and concluded that the house exceeded building and lot coverage standards. As a result, the Borough zoning officer issued a stop work order. By then, the house had been framed and the roof shingled.
After the architect and contractor met with Borough officials, they made adjustments to driveways and other impervious surfaces, which conformed the house to lot coverage requirements. The remaining nonconformity was building coverage; a covered rear porch on the house should have been added to the building coverage calculation, bringing that figure to 6,306 square feet  approximately 293 square feet greater than the permitted 6013 square feet. Plaintiff obtained approval to close the house at his own risk while seeking a variance for that nonconformity.
The variance application was considered at a special meeting of the Board on February 21, 2006, where plaintiff offered the testimony of Robert J. Baselice, the building contractor; Edward Sasson, the architect; and Victor Furmanec, a planner. Also testifying in support of plaintiff's application was his next-door neighbor, whose home faced the porch with the offending roof.
Baselice testified that the roof over the porch was an integral part of the house's drainage system. He testified that it had a material effect on the design of the house, not simply an aesthetic effect. He said it helped "any water penetrating through the property, [to] lessen the . . . water coming into the house above windows and doors." He concluded that it was not possible to reduce the overall size of the building to make up the almost 300 square feet of excess building coverage.
Sasson asserted that the porch roof had a positive function, and "that removing the roof doesn't improve the aesthetics or the functionality of the building." He testified that the porch roof served to direct the water away from certain areas of the house; that "[t]he porch roof controls drainage."
The licensed planner testified about the positive and negative criteria necessary for a variance under N.J.S.A. 40:55D-70c(1). He said the porch roof had no visible impact on the neighborhood; it was only visible to one neighboring house. He testified that removing the porch roof would cause water to fall into the interior of the southern part of the home; it would leave windows and doorways open to the elements, creating a problem "affecting the house from the elements in general."
Furmanec testified that the house was "an attractively designed, single-family residence in a single-family residential neighborhood . . . [which] would be an asset to this neighborhood with minimal, if any, impact at all." He opined that the porch roof caused "no harm to the adjoining *845 property owners [or] to the public good." Finally, he testified that the covered rear porch and the house in general were compatible with the master plan, which focuses on homes that conform to the "quality and character of homes in the surrounding area."
The neighbor whose property faces the offending porch testified that he did not "have a problem with it whatsoever."
The Borough zoning officer attended the meeting and testified about the errors that had initially been made in the calculations. His opinion was that "somebody made a miscalculation. I don't think it was done intentionally, I just think it was an error." He explained that under the ordinance, some covered porches counted toward building coverage requirements, and others did not, depending upon where the porches were located. He testified that the porch roof at issue counted toward total building coverage, causing the home to exceed building coverage requirements.
Board members commented on plaintiff's application, and particularly on the size of the house. Board member Frederick Kniesler commented:
I'm going to vote no only because I think the builder and his professionals  they did a very poor job on following through on the whole project. So in fact . . . the house is almost done but on issues, the overage on the square footage, "can't find the ordinance", I don't know, guys, if you hadn't tried to max out the property, you probably could have addressed all this.
Chairman John Conklin stated that: "I don't understand why [plaintiff] should benefit when he screwed up. Why shouldn't he pay the price for fixing it the way it should be." He said: "I think we're giving him a free pass. It's been irresponsible from the get-go. You're giving the guy a free pass." Board members generally expressed frustration with the size of other large homes being built in the Borough, to the maximum limits of the zoning requirements. The Board voted unanimously to deny plaintiff's application.
The Board's confirming resolution stated that Rumson Road, on which the property is located, is "an important, heavily traveled and visible street in the Borough." Therefore, "permitting this variance . . . would be detrimental to the zoning plan of the Borough and the neighborhood by allowing excessively sized and constructed houses without any . . . basis." It added that "[n]o legitimate reason or basis has been presented to justify or support the exceedence of this important limitation as to the building coverage," and "[t]he property/structure can relatively easily be reduced in size so as to conform."
Plaintiff challenged the Board's decision in an action in lieu of prerogative writs. He emphasized the minimal impact of the porch roof on the surrounding area and its role in the structure's drainage system. He asserted that Board members ignored his expert testimony. Plaintiff also emphasized that the Borough's zoning officer acknowledged that plaintiff's mistake was made in good faith.
Defendant categorized plaintiff's hardship as self-created, which did not justify a variance. Defendant stressed that plaintiff's failure to comply with the zoning requirements arose out of the negligence of plaintiff and his agents.
The trial judge agreed with plaintiff. He found that the Board failed to articulate any reason why the expert witness testimony in support of plaintiff's variance application was flawed. The judge concluded that the denial of plaintiff's application was based on a desire to set an example for future builders.
*846 The court emphasized the de minimis nature of the deviation, as well as the porch roof's role in the home's drainage system. He analogized the hardship faced by plaintiff to that faced by the successful plaintiff in Hill v. Bd. of Adj., Borough of Eatontown, 122 N.J.Super. 156, 299 A.2d 737 (App.Div.1972), where the borough sought to stop construction four months after mistakenly granting a building permit based on nonconforming plans. Accordingly, the trial judge found that the Board's ruling was arbitrary, unreasonable and capricious.
When we consider an appeal of a trial court's review of a municipal board's action, we are bound by the same standard as the trial court. New York SMSA, Ltd. P'ship v. Bd. of Adj., Twp. of Weehawken, 370 N.J.Super. 319, 331, 851 A.2d 110 (App.Div.2004). We give deference to a municipal board's decision, and such decisions should be overturned only when proven arbitrary, capricious or unreasonable. Ibid. "Because variances should be granted sparingly and with great caution, courts must give greater deference to a variance denial than to a grant." Ibid. A court's scope of review "is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Jock v. Zoning Bd. of Adj., Twp. of Wall, 184 N.J. 562, 597, 878 A.2d 785 (2005). We do not substitute our judgment for that of the municipal board. Leon N. Weiner & Assocs., Inc. v. Zoning Bd. of Adj., Borough of Glassboro, 144 N.J.Super. 509, 514, 366 A.2d 696 (App.Div.1976), certif. denied, 73 N.J. 55, 372 A.2d 320 (1977).
Here, plaintiff sought a bulk variance because his house did not comply with the Borough's building coverage requirements. The controlling statute for permitting such a variance is N.J.S.A. 40:55D-70c(1), which reads:
c. (1) Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act1 would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, [the board of adjustment shall have the power to] grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship[.] . . .
1 N.J.S.A. § 40:55D-62 [to -68.6].
To receive a variance under this statute, a plaintiff must demonstrate (1) that he "will suffer exceptional or undue hardship if the variance is not granted  the so-called positive criteria; and (2) that the variance will not result in a substantial detriment to the public good or the zoning plan  the so-called negative criteria." Nash v. Bd. of Adj., Twp. of Morris, 96 N.J. 97, 102, 474 A.2d 241 (1984).
N.J.S.A. 40:55D-70c(1) contains three subsections. Plaintiff's variance application falls under subsection (c), which allows a variance in "extraordinary and exceptional situation[s] uniquely affecting a specific piece of property or the structures lawfully existing thereon." N.J.S.A. 40:55D-70c(1)(c); William M. Cox & Donald M. Ross, New Jersey Zoning and Land Use Administration § 6-2.4, at 129 (2007).
*847 An example of a factual situation that could warrant a subsection c(1)(c) variance is found in Hawrylo v. Bd. of Adj. of Harding Twp., 249 N.J.Super. 568, 592 A.2d 1236 (App.Div.1991). There, a landowner received a variance to rebuild a portion of a barn that was located closer to the property line than permitted by the ordinance. Id. at 571, 592 A.2d 1236. The barn had been in the same location since 1920 and had been the subject of prior variances. Ibid. The board of adjustment granted a variance, and the Law Division affirmed. Ibid. The plaintiffs, adjacent landowners, appealed. Ibid. In affirming, we rejected the plaintiffs' "urging that only a geological condition qualifies as an `exceptional situation'" under subsection c(1)(c). Id. at 579, 592 A.2d 1236. We observed that prior to the enactment of that subsection,
the hardship triggering the grant of a variance had to be caused by exceptional narrowness, shallowness or shape of a specific piece of property or by reason of exceptional topographic conditions or other extraordinary and exceptional situation. The Legislature broadened the criteria specifically to include "an extraordinary or exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon."
[Ibid. (quoting N.J.S.A. 40:55D-70c(1)(c)).]
We agreed with the trial judge, who found that "a c(1) variance may be granted based on more than proof of hardship alone," and that "rejecting financial hardship as irrelevant to support a c(1) variance grant does not square with current case law." Id. at 581, 592 A.2d 1236. We consequently affirmed the variance based in substantial part on the property owners' financial hardship in moving the barn's foundation. Id. at 585, 592 A.2d 1236.
Here, whether plaintiff's situation qualifies as "exceptional" under subsection c(1)(c) was not adequately addressed by either the Board or the trial court. We begin with the Board.
The Board's resolution contains a number of findings that are not supported by the record. The second paragraph of the resolution makes reference to the "lot coverage misrepresentations" in plaintiff's application. Though there were errors in the lot coverage calculations, the record contains no evidence to support the Board's conclusion that the miscalculations were misrepresentations. No evidence suggests that plaintiff intended to submit plans based on incorrect calculations, or that plaintiff's experts intentionally altered the calculations to bring the house into compliance with the lot and building coverage requirements. The zoning officer pointed out that plaintiff's professionals "never realized" that covered porches facing a rear yard are included in the coverage requirements. It was his conclusion that though the professionals miscalculated the numbers, they did not do so intentionally. Thus, though there were errors in the application, the evidence did not suggest that plaintiff or his professionals intentionally violated the zoning requirements.
The resolution also states that the property "can relatively easily be reduced in size so as to conform, by removing a small portion of the structure." That conclusion is not based on the record. None of the professionals testified that the structure could easily be brought into compliance. While the offending roof over the porch can be removed, the only testimony before the Board was that removing the roof would leave the house's windows and doorways open to the elements, creating "problems . . . affecting the house from the elements in general."
*848 In examining plaintiff's application, the Board did not review plaintiff's experts' testimony concerning the positive or negative criteria. Neither did the Board analyze the effect removing the offending porch roof would have on the home and its drainage system. While a municipal board may accept or reject the testimony of a witness, Kramer v. Bd. of Adj., Sea Girt, 45 N.J. 268, 288, 212 A.2d 153 (1965), the board may not unreasonably reject expert testimony "based only upon bare allegations or unsubstantiated beliefs." New York SMSA, Ltd. P'ship, supra, 370 N.J.Super. at 338, 851 A.2d 110. The Board here simply concluded, based on the extra 293 square feet of building coverage, that plaintiff put himself in a position where a variance was necessary, and to permit a variance would be detrimental to the zoning plan and the neighborhood. The Board's conclusions were not supported by the factual record.
To support its argument that plaintiff's self-created hardship precludes variance relief, the Board relies on Deer-Glen Estates v. Bd. of Adj. & Appeal, Borough of Fort Lee, 39 N.J.Super. 380, 121 A.2d 26 (App.Div.1956) and Place v. Bd. of Adj., Borough of Saddle River, 42 N.J. 324, 200 A.2d 601 (1964). We do not find these cases applicable under the circumstances.
In Deer-Glen, supra, the plaintiff obtained a building permit for a home, and then made changes to the building plans that created side yard violations of the ordinance. 39 N.J.Super. at 382, 121 A.2d 26. The plaintiff did not file an amended building plan, and instead constructed the home out of conformance with the zoning requirement. Ibid. The plaintiff then sought a variance after the building inspector denied the plaintiff a certificate of occupancy. Ibid.
The board of adjustment denied the variance request, but the Law Division reversed the board and ordered the building inspector to issue a certificate of occupancy. Id. at 383, 121 A.2d 26. We reversed the Law Division, emphasizing that "[t]he hardship of which the owner complains is one that was self-imposed or self-created, and not one imposed by the terms of the zoning ordinance. . . . Plaintiff got itself into trouble through sheer negligence, accompanied by a flagrant violation of the zoning ordinance requirements." Id. at 385, 121 A.2d 26.
In Place, supra, the plaintiffs began constructing a fallout shelter without a building permit. 42 N.J. at 327, 200 A.2d 601. When the board of adjustment became aware of the structure's side yard violations, the plaintiffs sought a variance, citing as a hardship the money they had spent to that point, as well as the potential additional expense of moving the structure. Id. at 331, 200 A.2d 601. In affirming the Law Division, which ruled for the board of adjustment, the Supreme Court observed that the hardship the plaintiff sought was unrelated to the physical characteristics of the land, and therefore did not entitle the plaintiff to a variance. Id. at 331-32, 200 A.2d 601.
Neither Deer-Glen nor Place support defendant's arguments under the facts here. In both cases, the plaintiffs acted intentionally; in Deer-Glen, supra, the plaintiff modified its plan without notifying the municipality, 39 N.J.Super. at 382, 121 A.2d 26, and in Place, supra, the plaintiff began construction without first obtaining a building permit. 42 N.J. at 327, 200 A.2d 601. Both plaintiffs proceeded with construction without obtaining proper permits, exhibiting elements of bad faith. That bad faith is not present here. Plaintiff submitted what he thought to be conforming building plans and sought and received a building permit. He did not flagrantly violate the zoning requirements.
*849 In addition, the Place Court's finding that the hardship must be related to the physical characteristics of the land predated the statutory amendment that included "exceptional situations uniquely affecting a specific piece of property or the structures lawfully existing thereon." L. 1984, c. 20, § 12; see Hawrylo, supra, 249 N.J.Super. at 579, 592 A.2d 1236. As we explained in Hawrylo, under the amended statutory language, financial hardship is not irrelevant when determining whether a variance grant is warranted. Id. at 581, 592 A.2d 1236.
In its brief on appeal, the Board further asserts that a variance under subsection c(1)(c) was not warranted because to qualify for relief under that section, the structure must be "lawfully existing" on the property. See N.J.S.A. 40:55D-70c(1)(c). It claims that plaintiff's house was not lawfully existing because it exceeded the zoning ordinance's building coverage requirements. We do not agree, however, that simply because a structure is nonconforming, it may not qualify as a structure lawfully existing on the property. As we explained in Hawrylo, supra, the reference to a "structure lawfully existing thereon" in N.J.S.A. 40:55D-70c(1)(c) was not "intended to preclude a nonconforming structure." Id. at 579-80, 592 A.2d 1236; cf. Davis Enters. v. Karpf, 105 N.J. 476, 493, 523 A.2d 137 (1987) (in discussing the existence of a nonconforming structure on an unusually shaped lot, Justice Stein said: "The existence of a nonconforming structure may justify a variance from maximum land-coverage requirements." (Stein, J., concurring)).
Accordingly, we do not conclude that just because plaintiff's property exceeds the building coverage requirements, it may not be considered a structure lawfully existing on the property to qualify for variance relief under subsection c(1)(c). Though the building permit was issued in the face of incorrect plans, the building conforms to the use requirements of the zoning ordinance, and the minor variation from the building coverage requirements does not render the structure unlawful so as to make subsection c(1)(c) inapplicable.
Thus, we conclude that the Board's actions were arbitrary under the circumstances. The Board did not consider whether the evidence plaintiff presented at the Board hearing qualifies plaintiff for a variance under N.J.S.A. 40:55D-70c(1)(c). We agree with the trial judge that the Board's decision must be set aside.
We also conclude, however, that the Law Division's analysis was insufficient to support its decision to award plaintiff a variance. The judge did not specifically discuss whether the circumstances of plaintiff's application fit within a subsection c(1)(c) analysis. The judge also inappropriately relied on our decision in Hill, supra, 122 N.J.Super. 156, 299 A.2d 737, for the proposition that a variance should have been granted because plaintiff's plans had been approved by the municipality and building was commenced before the parties realized the plans were in error. We do not find Hill to be applicable under the facts here.
In Hill, the property owners received a building permit to add a single-car garage, laundry room, bath and foyer to their premises. Id. at 158, 299 A.2d 737. The plans showed a four-foot side yard, but the zoning ordinance contained a seven-foot side yard requirement. Ibid. The building inspector mistakenly issued the permit. Ibid.
The property owners applied for, and were granted, a variance by the board of adjustment. Id. at 159, 299 A.2d 737. The neighbors appealed; the trial court affirmed the grant of the variance because *850 removal of a portion of the garage, which had already been constructed, would result in additional cost and deprive the property owners of the use of the remaining structure. Ibid. We affirmed, applying the equitable doctrine of "relative hardship," concluding that the additional cost, plus the loss of the intended use of the garage, were sufficient bases upon which to grant the variance. Id. at 164-65, 299 A.2d 737.
Hill is not directly applicable because the errors in the plans there were apparent on their face, and the municipal building inspector made a mistake in issuing the building permit. Here, to the contrary, the plans appeared to comply with the zoning regulations. The fault was primarily with plaintiff and his professionals, not with the municipal building inspector as it was in Hill.
We therefore reverse the decision of the trial judge, as he improperly relied on Hill and failed to sufficiently analyze plaintiff's application under N.J.S.A. 40:55D-70c(1)(c). We remand plaintiff's application to the Board to reconsider the application in light of that statute, and to make appropriate findings of fact as to the positive and negative criteria, giving due regard to the testimony of plaintiff's experts. On remand, both plaintiff and the Board may present additional evidence should they choose to do so. We do not retain jurisdiction.
NOTES
[1] Judge Yannotti did not participate in oral argument. With the consent of counsel, he has joined in this opinion.
[2] There was a dispute before both the Board and the trial court whether the zoning ordinance was available to the architects. The record does not establish that the zoning ordinance was unavailable.