**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3839-16T1

CT TR HOLDINGS, LLC, DT TR
HOLDINGS, LLC, CT95-CT07
TR HOLDINGS, LLC, and DT95-DT-07
TR HOLDINGS, LLC,

    Plaintiffs-Appellants,

v.

TOMS RIVER PLANNING BOARD and
SEASIDE HEIGHTS HOSPITALITY, LLC,

    Defendants-Respondents.

_____

Argued July 31, 2018 — Decided August 9, 2018

Before Judges Sabatino, Mayer and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Ocean County, Docket No. L-2411-
16.

R.S. Gasiorowski argued the cause for
appellants (Gasiorowski and Holobinko,
attorneys; R.S. Gasiorowski, on the briefs).

Gregory P. McGuckin argued the cause for
respondent Toms River Planning Board (Dasti,
Murphy, McGuckin, Ulaky, Koutsouris & Connors,
attorneys; Gregory P. McGuckin, of counsel;
Martin J. Buckley, on the brief).

Michael B. York argued the cause for
respondent Seaside Heights Hospitality, LLC,

(Novins, York & Jacobus, attorneys; Michael B. York, on the brief).

PER CURIAM

Plaintiffs, property owners in Toms River Township, appeal from the trial court's April 3, 2017 order rejecting their challenge to the Township Planning Board's approval of the defendant developer's land use application to build a four-story hotel in the Township. Plaintiffs contend the Planning Board: lacked jurisdiction over facets of the application; failed to find the undue hardship needed to justify a deviation from the zoning ordinance's limitation of buildings to three stories; unjustifiably granted numerous variances; and acted, on the whole, arbitrarily and capriciously in approving the application.

For the reasons that follow, we affirm the trial court's sound decision in all but one respect. We remand for the limited and sole purpose of the Planning Board reopening the matter to consider whether the developer is entitled to a variance under either N.J.S.A. 40:55D-70(c)(1) or (c)(2) from the zoning ordinance's three-story limitation.

I.

The developer, defendant Seaside Heights Hospitality, LLC ("SHH"), is the owner of Block 1077, Lots 1 and 2 in Toms River Township. The property is on the north (westbound) side of State

2

Highway 37 and is situated in the Township's Highway Business Zoning District. The property is presently the site of the Pine Rest Motel.

SHH proposes to replace the existing motel with a new Hampton Inn Hotel, with associated parking and amenities. The new hotel would contain seventy-two guest units and occupy four stories. A hotel use is permitted in the zone. However, SHH requested several variances, as shown in this chart.[1]

| Principal Building | Required/ Permitted | Proposed | Ordinance |
|---|---|---|---|
| Minimum front yard setback (Route 37) | 60 feet | 38.61 feet | 348-10.26E(5)(a) |
| Minimum front yard setback (Adams Avenue) | 60 feet | 51.82 feet | 348-10.26E(5)(a) |
| Maximum building height | 40 feet, 3 useable floors | 43 feet, 4 useable floors | 348-10.26E(8) |

| Parking | Required/ Permitted | Proposed | Ordinance |
|---|---|---|---|
| Minimum Parking Spaces (Including hotel, meeting room, and restaurant) | 81 | 72 | 348-8.20(O)(24), (14), (32) |
| Minimum Handicapped Parking Spaces | 4 | 3 | 348-8.38B |

---

[1] The chart is derived from the third planning report in the plaintiffs' appendix.

| Isles[2] | 10 feet wide | 4 feet to 7 feet | 348-8.20J(8) |
|---|---|---|---|

| Fence | Required/ Permitted | Proposed | Ordinance |
|---|---|---|---|
| Front Yard Setback (Adams Avenue) | 60 feet | 1 foot | 348-8.13A |

| Refuse Enclosures | Required/ Permitted | Proposed | Ordinance |
|---|---|---|---|
| Minimum Front Yard Setback | 60 feet | 20 feet | 348-8.27A |
| Minimum Distance from Side Property Line | 10 feet | 4 feet | 348-8.27I |

| Ground Signs | Required/ Permitted | Proposed | Ordinance |
|---|---|---|---|
| Minimum Sign Setback from ROW | 30 feet | 2.2 feet | 348-8.26A(3)(c) |
| Maximum Height (Left Side Elevation) | 30 feet | 38 feet, 6 inches | 348-8.26A(4) & 348-8.26A(2)(Table 1) |
| Maximum Height (Right Side Elevation) | 30 feet | 38 feet, 6 inches | 348-8.26A(4) & 348-8.26A(2)(Table 1) |
| Maximum Height (Rear Elevation) | 30 feet | 38 feet, 6 inches | 348-8.26A(4) & 348-8.26A(2)(Table 1) |

---

[2] Although not contained in the third planning report, this particular variance was discussed and granted at the public hearing.

A-3839-16T1

In January 2016, SHH applied to the Planning Board, seeking preliminary and final major site plan approval for the proposed hotel, including the above-noted variances and several design waivers. On July 6, 2016, the Planning Board conducted a public hearing on SHH's application. Professional engineer Brian Murphy, the sole witness, testified as an expert for SHH.[3]

As described by Murphy, along the south side of the property is Route 37 and various marinas, along the west side is a self-storage facility and woods, along the east side is a dog grooming facility, and along the north side is Adams Avenue and a residential development. The residential development does not front Adams Avenue. All of the residences abut the subject property through rear yards.

Because the proposed project does not have any access points from Adams Avenue, Murphy concluded the project would cause no intrusion into the residential area. There would be a single point of access to the new hotel from Route 37. SHH plans to provide a curb and sidewalks along both Route 37 and Adams Avenue.

Regarding the front setbacks, Murphy stated that the main building conforms to the zone's setback requirements. However,

---

[3] Murphy had testified before the Planning Board in the past, and the Board accepted him as an expert witness. His full credentials (which plaintiffs do not challenge) are not detailed in the record supplied on appeal.

he noted variances were necessary because the canopy along Route 37 and the doorway of the rear entry at the bottom level along Adams Avenue involved a "unique situation," in which there were two front setbacks associated with the property.

As to the building height, Murphy noted that the requested height of forty-three feet was about a seven and one-half percent increase above the forty-foot maximum because the front setbacks had lowered the amount of buildable area. Murphy further noted that the property is located in a flood zone and the existing structures are all under the permitted floor elevation. Because the new building will be complying with the floor elevation limits, the main floor and "mechanicals" will be above the floor elevation and everything else would be "pushed up" as well. Murphy commented that this arrangement has a better visual impact for the area and the property, and that the actual footage of the height variance is three feet, less than the ten percent maximum set forth in N.J.S.A. 40:55D-70(d)(6). Murphy noted that having four stories instead of three makes the building more visible.

Murphy explained that to use the meeting room (which is likely going to be a fitness room) or the restaurant area, customers would have to be patrons of the hotel, so providing separate parking for such persons is not necessary. Murphy further explained that SHH wants to remove an existing fence and install

A-3839-16T1

a newer, more attractive-looking, one along Adams Avenue. The replacement fence will provide a better physical and visual barrier between the new hotel and the residential units.

Murphy noted that the refuse area, which is located in the northeast corner of the property, requires variances. Although the Adams Avenue area functions as a back area, it is actually a front yard, and the ordinance disallows a refuse area in front yards. Murphy also requested a variance for a proposed pylon sign.

Murphy explained that SHH did not propose a loading zone because the building was self-sufficient, other than loading for coffee and orange juice during off-hours. Murphy explained that because of the location of the parking stalls, SHH is providing a physical buffer between the aisle and the parking areas.

Murphy reported that SHH had met with representatives of the State Department of Environmental Protection, and was told SHH did not need to conduct water quality improvements, because any drainage installed would not be effective due to tidal conditions, and the stone on the site had been compacted for over fifty years. Moreover, CAFRA approval had already been granted. Although SHH planned on reducing the water flow and runoff slightly, the runoff impact on the area was negligible.

As Murphy acknowledged, SHH did require variances for parking and access. A Board member expressed concerns about access for emergencies, and suggested a gate in the fence and a depressed curb for emergency vehicles to access the building from the back. SHH agreed to do this. Board members also asked questions about parking, the hotel rooms, the showers, and the landscaping. SHH agreed to move the fence in to allow planting on the exterior.

On the whole, Murphy opined that the assorted variances and design waivers sought by SHH could be granted without substantial detriment to the zoning ordinance and master plan. He testified the overall plan was an upgrade to what exists now because of the improved safety against flood and better visual design.

He asserted that the overall benefits of the proposed hotel outweigh any detriments. No questions were posed from the audience at the hearing.

The Board unanimously voted to approve the project. The Board passed the associated written resolution on July 20, 2016.

Plaintiffs, CT TR Holdings, LLC, DT TR Holdings, LLC, CT95-CT07 TR Holdings, LLC, and DT95-DT-07 TR Holdings, LLC, are owners of Block 688.03, Lot 27 in the Township. As represented by counsel at the appellate oral argument, plaintiffs' property does not abut the subject parcel and is apparently within about a half mile of it.

A-3839-16T1

In August 2016, plaintiffs, who had not appeared at the Planning Board hearing to oppose the application, filed an action in lieu of prerogative writs in the Law Division, contesting the approval of SHH's project. After briefing, the trial court heard oral argument on April 3, 2017. That same day, the court issued an order upholding the Board's decision in all respects, accompanied by a detailed fifteen-page written opinion.

Among other things, the trial court found that the Planning Board had jurisdiction over SHH's application. It specifically concluded that SHH did not need to obtain from the Zoning Board of Adjustment a variance for the height of the building under N.J.S.A. 40:55D-70(d)(6). The court found subsection (d)(6) inapplicable because the height variance of three feet sought by SHH was less than ten percent of the maximum permitted height of forty feet. The court also noted that there was "undue hardship" to justify the slight deviation from the height restriction because of flood zone requirements and FEMA regulations.

The trial court analyzed numerous other challenged aspects of the Planning Board's decision, and rejected those challenges. The court recognized that the law generally calls for considerable deference to land use bodies in reviewing their findings. Applying those principles of deference, the court found ample evidence in the record supports the Board's grant of the variances and its

A-3839-16T1

determination that the approvals will not cause substantial detriment to adjacent property owners. Consequently, the court dismissed plaintiffs' complaint.

On this appeal, plaintiffs argue that: (1) SHH required a (d)(6) variance from the Zoning Board of Adjustment; (2) the record lacked evidence to support a (c)(1) variance for the nonconforming number of stories, and the Planning Board made no finding of undue hardship to justify such relief; and (3) the collective grant of numerous other variances has essentially "rezoned" the property and inflicted "substantial detriment" upon surrounding properties "by minimizing setbacks, eliminating buffers, and creating unsafe and deficient parking." The Planning Board and SHH oppose those assertions, and advocate that we affirm the trial court's decision.[4]

## II.

As the trial court aptly recognized, the scope of judicial review in this land use matter is circumscribed. "[P]ublic [land use] bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005) (citing Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268,

---

[4] We were advised at oral argument that the hotel project has not yet been built, in light of the pendency of this appeal.

296 (1965), and upholding the grant of a hardship variance). The ordinary standard of judicial review applied to such decisions by a land use body is to determine whether the decision was "arbitrary, capricious, or in manifest abuse of its discretionary authority . . . ." Ibid.

As the Supreme Court has repeatedly instructed, "courts ordinarily should not disturb the discretionary decisions of local [land use] boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of the Borough of N. Caldwell, 160 N.J. 41, 58-59 (1999). "Even when doubt is entertained as to the wisdom of the action, or some part of it, there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved." Kramer, 45 N.J. at 296-97.

That said, determinations on questions of law in land use matters do not warrant equivalent deference, and are reviewed de novo. Bubis v. Kassin, 184 N.J. 612, 627 (2005). The de novo standard of review of such legal decisions continues on appeal after a trial court has made its own ruling. See James R. Ientile, Inc. v. Zoning Bd. of Adjustment, 271 N.J. Super. 326, 329 (App. Div. 1994) (citing Cherney v. Matawan Borough Zoning Bd. of Adjustment, 221 N.J. Super. 141, 144-45 (App. Div. 1987)).

The primary focus of plaintiffs' appeal centers upon the hotel project's deviations from the building height and floor restrictions set forth in the Township's code. In that regard, Section 348-10.26(E)(8) of the code prescribes the following limitations for structures within the highway business zone:

> Maximum building height: 40 feet subject to the provisions of § 348-5.12[5]. In any event, the building shall not contain more than three usable floor levels counted vertically at any point in the building above the grade level as determined by the average grade elevation of the corners of the building.
>
> [(Emphasis added).]

This portion of the governing ordinance thus imposes two distinct requirements: (1) that the building be no more than forty feet high; and (2) that the building contain no more than three stories. Here, SHH seeks to build a hotel that deviates from these requirements, with a structure that would be three feet over the height limitation and contain a disallowed fourth story with guest rooms.

Pursuant to the Municipal Law Use Law ("MLUL"), N.J.S.A. 40:55D-1 to -163, a "subsection (d)(6)" height variance is required when "a height of a principal structure . . . exceeds by 10 feet or 10% the maximum height permitted in the district for a principal

---

[5] The cross reference to Section 348-5.12 does not bear upon this case.

A-3839-16T1

structure." See also Shri Sai Voorhees, LLC v. Twp. of Voorhees, 406 N.J. Super. 497, 504 (Law Div. 2009). The power to grant such a variance under subsection (d)(6) ordinarily would fall within the jurisdiction of the local Zoning Board of Adjustment. N.J.S.A. 40:55D-70.

Conversely, if the height of a proposed structure only exceeds the maximum permissible height by less than ten feet and by less than ten percent, then a (d)(6) variance is not needed, and the applicant can instead seek relief through a variance under subsection (c)(1) or (c)(2) of the statute.[6] Shri Sai, 406 N.J. Super. at 504; see also Cox, Koenig, Drill & John-Basta, New Jersey Zoning & Land Use Administration, § 35-4 at 755-56 (2018). Such variances under subsection (c) may be issued by a local Planning Board as part of a land use application within that body's jurisdiction. Shri Sai, 406 N.J. Super. at 504. See also N.J.S.A. 40:55D-70(c).

The trial court concluded that a (d)(6) height variance was not necessary in this case, since the three extra feet that deviate

---

[6] A leading land use treatise advises that "[w]here the [ordinance] limitation as expressed in stories is exceeded but the limitation in feet is not it would seem appropriate to treat the application as a c variance inasmuch as the [d(6) provision of the] statute requires that the structure exceed the height limitation by '10 feet or 10%.'" Cox, Koenig, Drill & John-Basta, New Jersey Zoning & Land Use Administration, § 29-3.4 at 649.

A-3839-16T1

from the ordinance's forty-foot height limitation fall within the ten-foot and ten-percent statutory exceptions. We agree. Consequently, the Planning Board properly exercised jurisdiction to consider SHH's request for a (c)(1) height variance.

N.J.S.A. 40:55D-70(c)(1) sets forth these criteria to qualify for a subsection (c)(1) variance:

> Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to article 8 of this act[] would result in <u>peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer</u> of such property, grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship . . . .
>
> [(Emphasis added).]

"Generally, a variance under c(1) must be grounded in conditions peculiar to the particular lot as distinguished from other properties in the zone." Cox, Koenig, Drill & John-Basta, <u>New Jersey Zoning & Land Use Administration</u>, § 29-2.4 at 618.

In addition, an applicant for a subsection (c)(1) variance must demonstrate that: (1) the application would not cause a

14                                                                 A-3839-16T1

substantial detriment to the public good, and (2) that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance. Ten Stary Dom P'Ship v. Mauro, 216 N.J. 16, 29 (2013).

As noted, an applicant for a subsection (c)(1) variance must also show undue hardship. Lang, 160 N.J. at 52-53. The concept of undue hardship in this context solely refers to the particular physical conditions of the property and not to personal financial hardship. Ten Stary, 216 N.J. at 29-30.

Here, the Planning Board determined, and the trial court agreed, that the flood zone requirements for the subject property created an undue hardship. SHH's expert explained the existing motel building does not comply with the FEMA regulations that came into effect after it was built; the FEMA regulations made it so that "the main floors [in the proposed hotel] will be above the floor elevations[,]" and "[a]ll the mechanicals[7] will be up above the floor elevation[,] . . . pushing up everything[,]" and that the height variance would create a better visual impact on the area and the property. Further, as case law has recognized, the MLUL encourages municipalities to guide the development of the

---

[7] It appears that the term "mechanicals," as used within the context of this record, refers to heating, air conditioning, and electrical equipment needed to service the building as a whole.

land to minimize threats from fire, flood, and other natural disasters and promote desirable visual environment. Ten Stary, 216 N.J. at 31. Murphy opined that the variance could be accomplished without substantial detriment and that the benefits outweigh any detriment.

The Planning Board was persuaded by this testimony and concluded that SHH established undue hardship to justify a three-foot deviation from the zone's forty-foot height limitation and other specified deviations from the code. The Board further concluded that SHH satisfied the negative criteria for a (c)(1) variance because the deviations will not cause substantial detriment. The trial court deferred to these well-supported findings, and so do we.

Unfortunately, however, the Planning Board made no findings in its resolution addressing whether SSH fulfilled the criteria for a subsection (c) variance as to the distinct separate provision within Ordinance § 348-10.26(E)(8) restricting buildings in the zone to three floors. Logically, the floor restriction addresses policy concerns that go beyond the mere total height of a building. Adding a fourth floor to a hotel will surely create more usable space for guest rooms, and, in turn, proportionately create more traffic, parking needs, noise, demands on services, and other land use impacts. Presumably the governing body of the Township had

16                                                          A-3839-16T1

such concerns in mind when it included the three-story floor restriction in the ordinance, prefaced by the phrase, "in any event, . . ." after expressing the forty-foot height limitation.

The floor restriction is clearly an independent requirement of the ordinance that must be observed, in addition to its maximum height requirement. To be sure, height and floor restrictions are related to one another, as we are mindful that general building code restrictions dictate minimum ceiling heights for occupied floors. But there is sufficient variation in how far a developer may choose to exceed such per-floor ceiling minimums, so as to make the ordinance's limit on the number of floors a meaningful separate requirement.

The present record is bereft of any testimony or other evidence that specifically addresses under subsection (c)(1) why the additional fourth floor of the proposed hotel is needed to avoid an undue hardship and why such a deviation comports with the applicable negative criteria under the MLUL. At most, there is a passing reference to the "visibility" of the hotel from the surrounding area, but that is a characteristic more relevant to height rather than to the number of floors. Conceivably, the hotel could be forty-three feet high and contain only three floors having slightly higher ceilings.

The key point is this discrete floor issue was not addressed in the record, nor in the Planning Board's resolution. Because of that material omission, the issue must be remanded to the Planning Board for its consideration at a new hearing, with appropriate public notice. At such a hearing, SHH may seek variance relief under subsection (c)(1) of the MLUL or, if more appropriate, subsection (c)(2).[8]

Aside from the floor issue, we are unpersuaded by the remaining arguments presented on appeal, as none of them deserve comment in light of our limited scope of review. R. 2:11-3(e)(1)(E). We therefore affirm on all of the other issues raised, substantially for the sound reasons expressed in the trial court's written opinion.

The matter accordingly is remanded to the Planning Board for rehearing. At such a hearing, and in any ensuing litigation, plaintiffs shall be precluded by principles of res judicata from raising any new issues or relitigating matters we have resolved

---

[8] In contrast to subsection (c)(1), subsection (c)(2) authorizes variances where "in an application or appeal relating to a specific piece of property [it is shown that] the purposes of this act . . . would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, [the Board may] grant a variance to allow departure from regulations pursuant to article 8 of this act . . . ." N.J.S.A. 40:55D-70(c)(2); see also Lang, 160 N.J. at 55-57; Green Meadows at Montville, LLC v. Planning Bd. of the Twp. of Montville, 329 N.J. Super. 12, 22 (App. Div. 2000).

A-3839-16T1

on this appeal. That said, nothing forecloses SHH from revising its project plans for renewed consideration by the Board. Any final decision of the Board on remand may be reviewed in a timely action before the trial court.

Affirmed in part, and remanded in part. We do not retain jurisdiction and do not specify any date for the completion of the remand.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3839-16T1