**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1409-23

ALLEN BERMAN, ANDREW
SCHEFFER, JON BLATT,
MATTHEW SCOBLE, and
KATHERINE HARSCAR,

     Plaintiffs-Appellants,

v.

BOROUGH OF RUMSON
PLANNING BOARD, YELLOW
BROOK PROPERTY CO., LLC,

     Defendants-Respondents.

_____

Argued February 24, 2025 – Decided March 19, 2025

Before Judges Sabatino, Jacobs, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1114-22.

Richard C. Sciria argued the cause for appellants (Hanlon Niemann & Wright, PC, attorneys; Richard C. Sciria, of counsel and on the briefs).

Michael B. Steib (Michael B. Steib, PA) argued the cause for respondent Borough of Rumson Planning Board.

Craig M. Gianetti argued the cause for respondent Yellow Brook Property Co., LLC (Day Pitney LLP, attorneys; Craig M. Gianetti, of counsel and on the brief; Chelsea Turiano, on the brief).

PER CURIAM

Plaintiffs are five residents of the Borough of Rumson who live within two hundred feet of a planned fourteen-unit multifamily affordable housing project. Opposed to the project, they presented objections and expert testimony before the Borough's Planning Board when the developer sought site plan approval. The Planning Board nevertheless approved the site plan, leading plaintiffs to bring this action in lieu of prerogative writs in the Law Division against the developer and the Planning Board. On de novo review, the trial court upheld the Planning Board's decision.

Plaintiffs then brought the present appeal, principally arguing the Planning Board and the trial court misconstrued and misapplied the Borough's building height ordinance. Plaintiffs contend the developer was required to obtain variances from the Borough's Zoning Board of Adjustment in light of the revised lot grade approved under the final site plan, arguing two of the buildings

will be more than ten percent above the maximum allowed under the height ordinance.

We affirm, substantially for the sound reasons set forth in the November 29, 2023 written opinion of Law Division Judge Linda Grasso Jones. We amplify the judge's reasons in the following short discussion.

We incorporate by reference the trial court's recitation of the pertinent facts and need not repeat them at length here. The following summary will suffice for our purposes.

The project consists of six buildings. The area was specially rezoned to enable the project, pursuant to a settlement[1] of the Borough's affordable housing obligations. The developer, co-defendant Yellow Brook Property Co., LLC ("Yellow Brook"), was a party to the settlement.

In February 2021, Yellow Brook filed an application with the Planning Board requesting preliminary and final major site plan approval to construct the project. The plans were attested to be in substantial compliance with the approved "market concept" plans attached to the settlement agreement. The Planning Board conducted hearings concerning the application on four

---

[1] The bona fides of the settlement, which was achieved in separate litigation, are not before us.

A-1409-23

intermittent days between November 2021 and February 2022.

The Borough's height ordinance prescribes a 35-foot building height maximum.[2] Yellow Brook's approved site plan included a proposed revised lot grade approximately five feet higher than the original lot grade for the development. As explained at the hearings by Yellow Brook's engineer, a re-grading of the property became necessary "to address stormwater management and sanitary sewer needs of the project." Specifically, the engineer testified that "[i]n order to detain our runoff, we have to elevate certain portions [of the land] based on [the] water table." The re-grading was undertaken to reduce the volume of water needed to be detained on-site.

Yellow Brook's engineer further explained that stormwater management regulations require improvements to be at least one foot above the seasonal high-water table. A series of tests conducted throughout the site identified those seasonal high-water table locations. The lot grade plans were accordingly revised to conform with that particular stormwater requirement.

---

[2] The Municipal Land Use Law, N.J.S.A. 40:55D-70(d)(6), authorizes the issuance of a variance to permit "a height of a principal structure which exceeds by 10 feet or 10% the maximum height permitted in the district for a principal structure." Hence, no subsection (d)(6) variance is required if the structure's height does not exceed the ordinance's limitation by more than 10 feet or 10%.

A-1409-23

The parties' dispute before the Planning Board, which has continued in this litigation, focused on the following language within the Borough's height ordinance. In pertinent part, the ordinance defines "building height" as:

> . . . the vertical dimension measured to the highest point of a building . . . from the lowest original lot grade or any revised lot grade . . . . <u>Such revised lot grade shall not include mounding, terracing, or other devices designed to allow increased building height</u>.
>
> [Borough of Rumson, N.J., Code § 22-2.4 (emphasis added).]

If measured from the higher revised lot grade, all six buildings of the proposed project were within the 35-foot limit, with the tallest one measuring 34.73 feet. However, if measured from the lower original lot grade, two of the buildings would be above the 35 feet-plus-ten-percent height limit. Specifically, Building #1 would have a height of 40.36 feet and Building #2 would be 39.56 feet high, which respectively are 15.3% and 13.0% above the prescribed maximum of 35 feet.

Plaintiffs presented expert testimony at the Planning Board hearings from an engineer who opined that the revised buildings' heights violated the height ordinance. Tracking the language of the height ordinance, he asserted that the revised lot grade entailed "mounding, terracing or other devices designed to

5

allow increased building heights" and therefore the project required a subsection (d)(6) use variance from the Zoning Board of Adjustment.

Yellow Brook's expert disputed that interpretation. He opined that the raised lot grade elevations were prompted by stormwater management regulations and did not comprise "mounding, terracing, or other devices designed to allow increased building heights." The Planning Board's own expert concurred, opining that the manifest intent of the revised plans was not aimed at raising the heights of the buildings. Instead, she regarded the elevation changes to be a consequence of re-grading the property and complying with stormwater regulations.

After considering these competing interpretations of the height ordinance, the Planning Board found the positions of Yellow Brook's engineer and the Planning Board's own expert more persuasive than plaintiffs' expert. The Planning Board found the buildings' heights measured from the revised lot grade were within the 35-foot maximum, and thus no variance was required to be issued by the Zoning Board of Adjustment, and accordingly rejected plaintiffs' contention that it lacked jurisdiction over the site plan application.

In its detailed opinion in the ensuing Law Division action, the trial court likewise rejected plaintiffs' interpretation of the height ordinance. Among other

6

things, the court construed the term "designed" within the ordinance to connote an applicant's intent behind revising the lot grade, i.e., stormwater regulation compliance. In reaching its decision, the court cited dictionary definitions of the term "design" that encompass the intent or purpose associated with a specified plan. The court focused on the fact that evidence before the Planning Board showed the revised lot grades were induced by engineering and stormwater compliance reasons and not simply to enhance the heights of the buildings for non-impelled objectives. The court thus concluded the Planning Board's determination approving the final site plan was not arbitrary, capricious, nor unreasonable.

Plaintiffs now appeal, contending the trial court erred in construing and applying the height ordinance.[3] As part of their argument, plaintiffs contend the court overlooked the significance of the words "to allow" that immediately follow the word "designed" in the ordinance's last sentence. Plaintiffs argue that the full phrase "designed to allow" prohibits height elevations that result in violations of the height limitations, regardless of intent.

In evaluating these contentions, we are guided by well settled principles

---

[3] We were informed at oral argument that no stay was issued by the trial court and that construction may have already begun on at least one of the units.

of judicial review. In general, the actions of municipal land use boards are presumed to be valid unless a challenger shows that the actions are arbitrary, unreasonable, or inconsistent with the law. Lang v. Zoning Bd. of Adj., 160 N.J. 41, 58 (1999). As the Supreme Court has instructed, "courts ordinarily should not disturb the discretionary decisions of local [land use] boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Id. at 58–59. It is well established that "the law presumes that boards of adjustment and municipal governing bodies will act fairly and with proper motives and for valid reasons [and] will be set aside only when it is arbitrary, capricious or unreasonable." Kramer v. Bd. of Adj., 45 N.J. 268, 296 (1965).

The arbitrary, capricious, or unreasonable standard of review for a Planning Board's factual and discretionary determinations continues on appeal. Dowel Assocs. v. Harmony Twp. Land Use Bd., 403 N.J. Super. 1, 29 (App. Div. 2008). The purpose of the judicial review of the Planning Board's decision is to determine whether "the board acted within the statutory guidelines and properly exercised its discretion." Id. at 30.

However, a municipal board's interpretation of the law is reviewed de novo and not entitled to deference. Dunbar Homes, Inc. v. Zoning Bd. of Adj.,

233 N.J. 546, 559 (2018). "Although a municipality's informal interpretation of an ordinance is entitled to deference . . . that deference is not limitless. As with other legislative provisions, the meaning of an ordinance's language is a question of law that we review de novo." Bubis v. Kassin, 184 N.J. 612, 627 (2005). The de novo standard of review of such legal decisions continues on appeal after a trial court has made its own ruling. James R. Ientile, Inc. v. Zoning Bd. of Adj., 271 N.J. Super. 326, 329 (App. Div. 1994).

Applying these principles here, we conclude the Planning Board's interpretation and application of the height ordinance on these particular facts, which Judge Grasso Jones upheld in her thoughtful written opinion, was legally sound. The subsequent final site plan approval was not arbitrary, capricious or unreasonable. We add only a few comments.

As the parties and the trial court recognized, the term "designed" within the ordinance is not defined. The language is not apparently patterned after any statute or model municipal code. Given the undefined nature of the terminology, a court must construe it with a recognition of its ordinary usage and common meaning. Mountain Hill, L.L.C. v. Zoning Bd. of Adj., 403 N.J. Super. 210, 235 (App. Div. 2008); see also DiProspero v. Penn, 183 N.J. 477, 492 (2005). Under the circumstances, the trial court did not err in consulting dictionary definitions.

We note that Merriam-Webster defines the verb "design" as: "to create, fashion, execute, or construct according to plan: DEVISE, CONTRIVE"; "to conceive and plan out in the mind"; "to have as a purpose: INTEND"; and "to devise for a specific function or end." Merriam-Webster's Collegiate Dictionary 338 (11th ed. 2003). Meanwhile, Merriam-Webster defines the noun "design" in pertinent part as: "a particular purpose held in view by an individual or group"; "deliberate purposive planning"; "an underlying scheme that governs functioning, developing, or unfolding: PATTERN; MOTIF"; "the plan or protocol for carrying out or accomplishing something"; and "the arrangement of elements or details in a product." Ibid. These definitions largely focus upon the intent or purpose that underlies the choice of a particular design.

Similarly, Black's Law Dictionary defines the noun as "[a] plan or scheme" and "[p]urpose or intention combined with a plan." Black's Law Dictionary 561 (12th ed. 2024). Again, the intent or motivation that underlies a plan is significant to the meaning of "design."

Although the trial court did not cite to definitions of the longer phrase "designed to allow," we are unpersuaded that the inclusion of the two words "to allow" alters the intent-based connotation. Merriam-Webster defines the verb "allow" as: "to assign as a share or suitable amount"; "to reckon as a deduction

10

or an addition"; "INTEND, PLAN"; "PERMIT"; "to make a possibility"; and "to give consideration to circumstances or contingencies."  Merriam-Webster's Collegiate Dictionary 33 (11th ed. 2003).  Comparably, Black's Law Dictionary defines "allow" as:  "[t]o put no obstacle in the way of"; "[t]o give consent to, to approve"; "[t]o assign for a particular purpose"; "[t]o make allowance or provision for; to take into account"; "[t]o grant by addition or subtraction"; "[t]o grant permission"; and "to mean, intend, or think."  Black's Law Dictionary 95 (12th ed. 2024).  Here again, the intent or purpose underlying the choice of a particular plan is significant.

The trial court did not err in utilizing an intent-based approach in construing the ordinance.  To be sure, the increases in elevation were not inadvertent nor accidental.  The developer purposely raised the lot grade elevations in order to comply with engineering and stormwater requirements.  The intent was not shown to be based on other non-impelled purposes such as creating better views from the residences nor increasing the value of any market units through "mounding or terracing."  The Planning Board and the court adopted a common-sense interpretation that is reasonable in the context presented.

A-1409-23

Two more points. First, we note the increases in elevation here are relatively modest. If measured from the original lot grade, in only two of the six buildings is the statutory 10% threshold surpassed; in one instance by 5.3% and in another 3.0%. Although we are not declaring these to be de minimis, we also note that plaintiffs have not shown why these stormwater-impelled modest revisions ought to be construed as consequential to a fair application of the ordinance's provisions.

Second, our decision is limited to the facts and context before us. For instance, we are not reaching the hypothetical question of whether a stormwater-impelled height increase of enormous magnitude would be a design that comports with the ordinance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12