**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0762-17T1

PETER D. CAMPANA and
MARGARET C. CAMPANA,

      Plaintiffs-Appellants,

v.

TOWNSHIP OF LONG BEACH
LAND USE BOARD, TOWNSHIP
OF LONG BEACH, RONALD
PINGARO, JAMES DECICCO,
and ANGELINE DECICCO,

      Defendants-Respondents.

_____

Argued February 4, 2019 – Decided July 29, 2019

Before Judges Messano and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0309-16.

Peter M. Campana, argued the cause for appellants (Peter D. Campana and Margaret C. Campana, on the pro se brief).

Adolph P. Sicheri argued the cause for respondent Township of Long Beach Land Use Board (Sicheri &

Sicheri, PC, attorneys; Adolph P. Sicheri, of counsel and on the brief).

Tennant D. Magee, Sr. argued the cause for respondents Township of Long Beach and Ron Pingaro (Tennant Magee Law, attorneys; Tennant D. Magee, Sr., on the brief).

Kenneth L. Lieby, Jr., argued the cause for respondents James DeCicco and Angeline DeCicco (Shackleton & Hazeltine, attorneys; Richard J. Shackleton and Russell J. Hems, on the brief).

PER CURIAM

Plaintiffs Peter and Margaret Campana appeal from a July 19, 2017 Law Division order, granting partial summary judgment against them, and an August 17, 2017 order, entering judgment on their complaint in lieu of prerogative writs in favor of their neighbors, defendants James and Angeline DeCicco, as well as the Township of Long Beach (Township), the Township's Land Use Board (Board), and the Township's Zoning Director (collectively, the Township defendants). The orders essentially rebuffed plaintiffs' attempt to reverse the Board's grant of bulk variances to the DeCiccos, compel the Township defendants to correct alleged violations and enforce zoning and construction ordinances against the DeCiccos, and require the DeCiccos to abate a nuisance by removing an alleged "spite fence." For the reasons that follow, we affirm.

## I.

Plaintiffs are the owners of a single-family residence located at 15 West Mississippi Avenue in the Township. Defendants James and Angeline DeCicco are the owners of the property located at 17 West Mississippi Avenue, adjacent to the Little Egg Harbor Bay. Both properties are immediately adjacent to one another, share a common boundary, and are located in the R-35 zone. In December 2009, the DeCiccos filed plans with the Township Construction Office to demolish the existing structure and build a new residential structure on their property. The Township initially rejected the DeCiccos' plan because the proposed lot coverage exceeded the thirty-three-and-one-third percent maximum lot coverage permitted in the R-35 zone. The DeCiccos submitted a revised plan that, among other things, reduced the lot coverage to 33.2%. The revised plan was approved and a building permit was issued on December 24, 2009, by Ron Pingaro, the Township's Director of Construction and Zoning.

Thereafter, the DeCiccos submitted another revised plan, which was approved on July 26, 2010, with certain changes. The changes required the DeCiccos to reduce the deck stairway to three feet wide, reduce the front porch area, and reduce the rear deck. However, the DeCiccos were permitted to construct an open arbor/pergola on one side of the deck. Ultimately, the

A-0762-17T1

DeCiccos constructed a deck stairway that was four feet, rather than three feet, wide. Although they reduced the deck size negligibly, they marginally increased the size of the open arbor/pergola. While the DeCiccos' house was under construction, plaintiffs complained to Township zoning officials orally and in writing that, due to the expanded deck, the property exceeded the maximum lot coverage, "represent[ing] a change to the originally submitted plot plan and a violation of the . . . Township['s] maximum allowable land coverage ordinance." Nonetheless, after the house was built, the DeCiccos submitted an as-built survey to the Township, which was approved, and, on November 9, 2010, the Township issued the DeCiccos a certificate of occupancy (CO).

In a February 13, 2015 letter, plaintiffs renewed their complaint to the Township regarding the DeCiccos' deck exceeding the permissible lot coverage. Plaintiffs also identified additional alleged violations on the DeCiccos' property for which they sought the Township's intervention, including the DeCiccos' "[i]nstallation of an additional piling on the northeast corner of the . . . building" without the requisite permits, and the "[i]nstallation of two . . . freestanding flagpoles" and "thirteen . . . posts, each exceeding six . . . feet in height" in violation of various Township ordinances. Following a field inspection, Pingaro found no violations and notified plaintiffs accordingly. Specifically, Pingaro

4

explained that "[o]pen pergolas do not count as lot coverage" and the additional piling was "needed to carry [and] support [the] additional framing for [the] open pergola framing on [the] northeast corner" of the deck. Further, according to Pingaro, no permits were required for the flagpoles or the "posts."

On September 17, 2015, the DeCiccos submitted a bulk variance application to the Board, requesting relief from the thirty-three-and-one-third percent lot coverage requirement and the twenty-foot rear setback requirement. The variance would permit the DeCiccos to essentially expand their deck by covering the pergola area with deck flooring. Because the pergola area measured about seven feet by nine feet, for a total of sixty-three square feet, covering it would exceed the lot coverage requirement. The variance would also permit the DeCiccos to retain their existing stairs, which were constructed twenty feet to the bulkhead line, but 19.4 feet to the property line, thus violating the rear setback requirement by .6 feet. When constructed, the DeCiccos mistakenly believed the deck stairs complied with the twenty-foot setback requirement because they were measured from the bulkhead, rather than the property, line. The DeCiccos also explained in their application that when they constructed the new house in 2010, "[t]he lower rear deck was not squared off although the framing and support beams [were] in place." Thus, they sought "to

5

merely extend the portion of their deck to be in line with" the entire width and length of the deck structure to make it one continuous rear deck.

On November 12, 2015, the Board conducted a hearing on the DeCiccos' application, during which James DeCicco testified that extending the deck flooring would "aesthetically . . . enhance the rear area, and most importantly[,] would provide a safer condition" "for [his] grandchildren and great[-]grandchildren" to exit the sliding door onto the deck. When asked why the deck was built the way it was with a pergola and railing in the middle of the sliding door, DeCicco responded that it "was supposed to be a combination of a pergola and possibly a garden" but "it just never worked out." Plaintiffs and other residents vehemently opposed the application.

Notwithstanding the opposition, on December 9, 2015, the Board approved the variance application and adopted Resolution LUB 45-15, memorializing its approval. In the Resolution, the Board found that:

> (1)    The [DeCiccos] premises have the dimensions of [sixty] feet in width by 117.40 feet in depth for a total lot area of [7044] square feet.
>
>    . . . .
>
> (3)    The [DeCiccos] are seeking to extend the first floor deck [seven] additional feet to the end of the existing pergola.

A-0762-17T1

(4)   The [DeCiccos] require a bulk variance from the required [twenty] foot rear yard setback as an existing rear yard setback of 19.40 feet is proposed to the staircase.

(5)   The [DeCiccos] also require a bulk variance from the maximum permitted lot coverage of [thirty-three-and-one-third percent] as a lot coverage of 34.1% is existing and a lot coverage of [thirty-five percent] is proposed.

The Board acknowledged plaintiffs' objections as follows:

(8)   . . . [Plaintiffs] . . . objected to the construction as proposed because they believed that the condition the [DeCiccos] are seeking relief from was the result of the [DeCiccos] not constructing the dwelling in accordance with their original building plans submitted to the . . . Township['s] Building [D]epartment.

(9)   The Board is mindful of the fact that the "as built" survey provided by the [DeCiccos] to . . . [the] Township indicates some minor differences in the plans submitted by the [DeCiccos] in obtaining their building permit, but notes that it is common for minor field adjustments to be made to a dwelling during the course of construction and that all of the changes made, were approved by . . . [the] Township [B]uilding [D]epartment.

(10)  The Board notes that there is much animosity between the [DeCiccos] and [plaintiffs], but that animosity can[]not be considered by the Board in reaching its determination, as only the objective facts presented must be considered by the Board.

In granting the application, the Board made the following findings:

(11)   The Board finds that the construction as proposed in extending the deck the additional [seven] feet would square off the existing framing of the deck and would be a practical, aesthetically pleasing upgrade to the premises.

(12)   The Board finds that the construction of the deck as proposed will significantly improve the safe egress of the occupants of the dwelling as it will remove a potentially dangerous condition.

(13)   The Board finds that the addition of the [sixty-three] square feet of deck as proposed is a de minimis increase in the lot coverage under the facts of this application.

(14)   The Board finds that the construction as proposed does not significantly impact on the free flow of light and air or density or effect the use of the property.

(15)   The construction as proposed is an appropriate use of property in a seashore community but the Board finds that the deck should remain open and never be enclosed.

(16)   The denial of the variance requested will deprive the [DeCiccos] of a fair and reasonable use of their property without any corresponding benefit to the public good.

On January 29, 2016, plaintiffs filed a four-count complaint in lieu of prerogative writs against the Township defendants and the DeCiccos. The first two counts sought an order reversing the Board's decision granting the bulk variances to the DeCiccos, and requiring "the removal of the offending

8

construction[.]" Specifically, the first count alleged that the variance was unlawfully granted by the Board in violation of N.J.S.A. 40:55D-70(c)(1), which permits a variance to relieve "undue hardship" caused by

> exceptional narrowness, shallowness or shape of a specific piece of property, or . . . exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or . . . an extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon . . . .

Plaintiffs alleged that because the R-35 zone required a lot width of fifty feet and a square footage of 5000 square feet, and the DeCiccos' property was sixty feet wide and 7044 square feet, the property was "neither narrow nor shallow" and had "no unique conditions or physical features affecting the property." Rather, plaintiffs alleged that any hardship was "unrelated to the physical characteristics of the land" but was created by the DeCiccos' "unlawful" construction of "the house, deck[,] and stairway framed per the original 2009 plans that were rejected by the Township Construction Office."

The second count alleged that the variance was unlawfully granted by the Board in violation of N.J.S.A. 40:55D-70(c)(2), which permits a variance where there is inadequate evidence of hardship but where the variance would advance the purposes of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -

9

163, "and the benefits of the deviation would substantially outweigh any detriment[.]" According to plaintiffs, granting a variance for the completion of a self-induced problem was not beneficial and would not substantially outweigh the detriment to the neighbors whose "views and use and enjoyment of their properties" were "negatively affect[ed]" by the expanded "deck and deck framing."

The third count sought a writ of mandamus to correct the ordinance violations caused by the DeCiccos constructing "an entire section of the . . . deck after the 2010 [a]s-built drawing" was approved, and installing "a piling without a permit . . . , which piling exceeded the local height limitation and interfere[d] with [p]laintiffs' view and use and enjoyment of [their] property." Plaintiffs alleged that in addition to the unlawful construction of the decking and piling, the DeCiccos "built a 'spite fence'" consisting of very tall "landscaping," posts with birdhouses on top, "a mast," and "flag poles," all tied together with string to form a boundary fence that exceeded the height limitation for fences.[1] Plaintiffs sought an order requiring the Township defendants to enforce the

---

[1]  Throughout the record, there are various iterations of the objects comprising the alleged "spite fence," all of which apparently refer to the same objectionable structure. We recite the differing versions throughout this opinion, mindful of the confusion this may engender.

A-0762-17T1

Township's zoning and construction ordinances and compel the DeCiccos "to conform their entire rear deck and stairway" to the R-35 zoning requirements, including the "size, foot[]print, setback and decking" requirements, and remove the spite fence.

The fourth and final count was a nuisance claim against the DeCiccos. Plaintiffs alleged that "[t]he DeCiccos' use of their property" through the unlawful construction of the deck and piling and the installation of the items comprising the "spite fence," impaired plaintiffs' view "from the rear of their [p]roperty," "impaired the use and enjoyment of [p]laintiffs' property," and "proximately caused injury and harm to [p]laintiffs[]." Plaintiffs sought an order requiring "the DeCiccos to abate the nuisance by removing the unlawful piling, birdhouses, fence[,] and landscaping and any other unlawful items that interfere[d] unreasonably with the use and enjoyment of [p]laintiffs' property."

Following discovery, the Township defendants moved for partial summary judgment on count three. The DeCiccos joined the application, and also moved for summary judgment on count four. Plaintiffs opposed the motions. To support their opposition to the dismissal of count four, Margaret Campana submitted a certification describing the alleged "spite fence." According to Mrs. Campana, to replace small trees and bushes, the DeCiccos

11

had planted bushes and tall "'evergreen' type" trees, some of which were then ten to fifteen feet tall, along the boundary between the properties where plaintiffs had installed a five-foot-high wooden fence. Mrs. Campana stated the bushes and trees, "that [were] spaced very closely," "often ha[d] branches that overh[u]ng [their] fence onto [their] property" and "ha[d] grown into [their] property, under the ground, and compete[d] with" their landscaping.

In addition, Mrs. Campana explained "the DeCiccos installed [approximately thirteen] posts along the boundary[,]" "each exceeding six feet in height." "On top of [some of] the posts, the DeCiccos ha[d] placed birdhouses[,]" and, on others, "the DeCiccos ha[d] placed large hooks, and hung hanging baskets." According to Mrs. Campana, the DeCiccos then "wrapped string around the tree-bush-post collection," to "make up a 'spite fence.'"[2] Mrs. Campana explained that "[t]he DeCiccos' spite fence obstruct[ed] the passage of sun[]light across [their] rear yard." Based on the DeCiccos replacing their "small[er] trees and bushes" with larger ones, and "continuing to add items" and "place[]" them "in an unnecessarily high and unattractive way," plaintiffs believed that the DeCiccos were "doing this to spite [them] for complaining . . .

_____

[2] Mrs. Campana said "[t]here was also a flagpole placed right between the joint boundary and the bulkhead next to the Bay[,]" but "[t]he DeCiccos . . . removed [it] . . . well after [the] . . . lawsuit was filed."

12

about [the] deck expansion, and . . . for the malicious purpose of annoying [them.]"

Following oral argument, Assignment Judge Marlene Lynch Ford granted the summary judgment motions in a written decision and memorializing order issued on July 19, 2017. In her decision, after applying the applicable legal standard and viewing the evidence in the light most favorable to plaintiffs, the judge determined there were no genuine issues as to any material fact and the DeCiccos and the Township defendants were entitled to summary judgment as a matter of law. As to count four, the judge acknowledged that under Bubis v. Kassin, 184 N.J. 612, 620 (2005), the court should "look[] to the function of the [objectionable] structure" to determine whether it constituted a fence. In so doing, the judge distinguished the "elevated" "sand berm topped with six foot tall trees" deemed a fence in Bubis from the "plantings, small trees, birdhouses[,] and poles" in this case.[3]

---

[3] In Bubis, because the municipality's ordinances failed to provide a definition, the Court was required to define a fence and, to that end, consulted multiple sources, including various dictionary definitions. 184 N.J. at 620-21. Although the definitions varied, the Court discerned "two guideposts for [its] analysis[,]" namely, that fences are not limited to a certain type of material, and "the user's intent and the actual function of the structure are dispositive in ascertaining whether a structure is a fence." Id. at 621. The Court concluded that "[a]s long as the structure marks a boundary or prevents intrusion or escape, then it is a

A-0762-17T1

After viewing the photographs relied upon by both parties to support their respective positions, the judge stated:

> [The DeCiccos] note[] that their collection of plantings, garden ornaments, flagpoles[,] and birdhouses do not form a barrier through which a person could not traverse. In fact, the [DeCiccos] maintain that but for the solid fence erected by . . . [p]laintiff[s] on the property line, the conditions on the [DeCiccos'] property, about which . . . [p]laintiffs complain, do not impede the view or the ability to traverse the property line.

The judge concluded "[t]he plantings and other items . . . do not function as a barrier or a fence" and "therefore . . . do not constitute a fence," as contemplated in Bubis. The judge continued that while bound by Bubis, "[t]he holding in Bubis . . . [was] limited to the unique structure presented in that case, the function of which was to prevent intrusion or escape," and "to circumvent the height restrictions in the fence ordinance[.]" "By contrast, the alleged barrier of the plantings, the poles with and without bird houses, and other physical objects which were installed by the [DeCiccos] over the course of time, does not function primarily as a fence which would impede ingress and egress from the

_____

fence, regardless of the material from which it is forged." Ibid. In its application of its definition of a fence to the objectionable structure in the case, the Court considered the "use and placement of the barrier at issue," "the size and position of trees," in addition to the "span, height, and location" of the alleged fence. Id. at 623.

14

property." In addition, the judge noted "this [S]tate does not recognize 'spite fences' as actionable, since conditions on land and the use of land [are] subject to state laws and local ordinances." Thus, according to the judge, "[t]he intent of the property owner is not a relevant consideration."

Further, in rejecting plaintiffs' contention "that the unpleasant or aesthetically unpleasing appearance of the [DeCiccos'] property constitute[d] a private nuisance," entitling plaintiffs "to injunctive or other relief[,]" the judge explained that there was no "evidence that the alleged wrongful conduct or condition invade[d plaintiffs'] property," and the complaints were solely "based upon the subjective opinion of . . . [p]laintiffs." Additionally, "even if unappealing to [p]laintiff[s]," there was "no dispute" that "the condition of the property did not create a hazard or health concern, and the Township did not issue any code violations." Thus, according to the judge, plaintiffs' nuisance claim "based upon the maintenance or establishment of a public nuisance" also failed.

Turning to count three, the judge articulated the crux of plaintiffs' contentions as follows:

> (i) the piling supporting the deck extension . . . was installed in violation of Section 64-11 of the Township Code; (ii) the spite fence . . . made up of trees, bushes, posts (with birdhouses)[,] and the boundary-flagpole

installed near the bulkhead area, conjoined . . . with string, which together comprise[] a boundary fence . . . exceeded the five-foot height limitation for fences in Section 205-51(A)(1) of the Township Code; and (iii) the flagpoles, including the tri-arm mast, installed within [ten] feet of the rear setback from the bulkhead line, are in violation of Section 205-11(C)(1) of the Township Code.

In rejecting plaintiffs' allegations of Code violations, the judge agreed with the Township defendants that under the Township's newly enacted ordinance, clarifying the setback requirements contained in Section 205-11, "neither the mast [n]or flagpoles [were] in violation of the Township Code." Specifically, Ordinance 17-01C, adopted on February 6, 2017, "permits flagpoles and decorative posts to encroach into the front, side, and rear yard setbacks of lots as regulated by Section 205-11 of the Township Code." Further, the judge explained that "[t]he issues about the 'spite fence' [were] rendered moot by the [c]ourt's determination that the collection of plantings and physical objects [did] not constitute a fence[,]" and "the issue of whether or not the piling was wrongfully installed more than seven years ago [was] untimely[.]" Moreover, according to the judge, "whether or not the structure should be removed or revised" would be determined at the trial on counts one and two "challeng[ing] the variance approvals."

16

Thereafter, a trial de novo on the record on the two remaining counts was conducted on August 15, 2017. In a written decision and conforming order issued on August 17, 2017, Judge Ford entered final judgment in favor of defendants and dismissed plaintiffs' complaint with prejudice. In her decision, noting that plaintiffs challenged the variance on the ground that it did not comply with the requirements of either N.J.S.A. 40:55D-70(c)(1) or (2), (hereafter a (c)(1) or (c)(2) variance), the judge summarized plaintiffs' arguments as follows:

> Plaintiffs allege the evidence presented did not justify the grant of variance relief. . . . Plaintiffs allege[] that the home was not constructed as represented in the plans, and that any hardship to the [DeCiccos] was a self-created hardship, and should not have been a basis for the grant of a bulk variance. Plaintiffs allege that in addition to inadequate evidence of undue hardship, [the DeCiccos] failed to show the variance would not result in a substantial detriment to the public good, or the zone plan. Moreover, [p]laintiffs claim no evidence was presented during the hearing or in the written application that granting the variance would further any of the purposes of the MLUL or that the [DeCiccos] would be deprived of fair and reasonable use of their property i[f] the variances were not granted.

Citing Lang v. Zoning Board of Adjustment of the Borough of North Caldwell, 160 N.J. 41, 55 (1999), the judge acknowledged that a variance under subsection (c)(1) "requires proof of the 'positive criteria,' which are predicated on 'exceptional and undue hardship'" to the applicant "that may inhibit the extent

17

to which the property can be used" "because of the exceptional shape and size of the lot." However, according to the judge, under Lang, whether a bulk variance "is requested under [s]ubsection (c)(1) or (c)(2), the applicant must satisfy the negative criteria" and show that the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zoned plan and zoning ordinance." Further, citing Medici v. BPR Company, 107 N.J. 1, 22 (1987), the judge noted that in evaluating the negative criteria, "[t]he board must evaluate the impact of the proposed variance upon the adjacent properties and determine whether or not it will cause such damage to the character of the neighborhood as to constitute 'substantial detriment to the public good.'"

After applying the applicable deferential standard of review to zoning board determinations, and reviewing the resolution of approval for the administrative findings required under N.J.S.A. 40:55D-10(g), Judge Ford determined that the Board's grant of the variance was neither "arbitrary, capricious, [n]or unreasonable[,]" and the resolution was "adequate." Based on the Board's findings, the judge was satisfied that the DeCiccos established both the positive and the negative criteria for a variance under either subsection (c)(1) or (c)(2).

Regarding the positive criteria, the judge stated:

> The Board found that the DeCiccos' [p]roperty [wa]s . . . . . improved by a two-story, single-family home with a first[-]floor deck/pergola structure and access stairs, all of which were permitted when constructed and a [CO] was issued. Both the stairs and the deck/pergola structure were depicted in the "as built" plans submitted to the Construction Office at the time the [CO] was issued. The "as built" plans assumed that the structure conformed with the zoning requirement. The first[-]floor deck structure is one structure with the deck portion having a floor and encompassed by a railing. The Board heard testimony that explained that the railing divides the sliding glass door and provides ingress and egress from the dwelling from the first[-]floor deck into the bedroom. The Board found this to be potentially an unsafe condition that should be corrected for safety purposes. . . . Defendant Board found that the granting of the variances to permit the incorporation of the [sixty-three] square[-]foot portion of the deck structure and the relocation of the railing will eliminate a potentially hazardous condition, and that the addition of the [sixty-three] square feet of coverage under the facts of the application was a minimal deviation from the Ordinance. . . . The Board concluded based upon substantial evidence presented before it that the positive criteria was established. The [c]ourt concurs with that conclusion.

The judge specifically rejected plaintiffs' argument that the DeCiccos did not satisfy the hardship requirement for a (c)(1) variance because there was no unique condition of the property, and the hardship was self-created by the DeCiccos failing to construct their home in accordance with the plans submitted

19

to the Township. Because the Board must consider the existing structure on the DeCiccos' property as approved by the Township Building Department and the Township Construction Office by its issuance of the CO in 2010, the judge agreed "that the peculiar condition of the property was not 'self-created' in the sense that it should bar the granting of a variance." See Cohen v. Bd of Adjustment of Borough of Rumson, 396 N.J. Super. 608, 619-20 (App. Div. 2007) (finding that the applicant qualified for a (c)(1) variance despite constructing a house that "exceeded the zoning ordinance's building coverage requirements" where "the building permit was issued in the face of incorrect plans"). Further, the judge agreed "that any claim based upon the issuance of the CO [was] untimely" inasmuch as "[t]he law require[d] an objection to be filed within [twenty] days." See N.J.S.A. 40:55D-72.[4]

---

[4] N.J.S.A. 40:55D-72(a) provides, in pertinent part, that

> [a]ppeals to the board of adjustment may be taken by any interested party affected by any decision of an administrative officer of the municipality based on or made in the enforcement of the zoning ordinance . . . . [and] shall be taken within [twenty] days by filing a notice of appeal . . . specifying the grounds of such appeal.

Rule 4:69-6(a), governing the time limitations for actions in lieu of prerogative writs, provides in pertinent part that "[n]o action in lieu of prerogative writs

In rejecting plaintiffs' arguments that the Board failed to properly evaluate the negative criteria, the judge stated:

> The Board . . . . found the increase of [sixty-three] square feet of lot coverage will have no or minimal impact on the surrounding neighborhood because the deck structure was already in existence and was not being enlarged or altered. The Board further noted there would be no change to the appearance of the structure, . . . other than covering the exposed parts of the deck, the pergola, and installing safety railings. The result will be a more symmetrical and pleasing appearance. . . .
>
> The Board further argues that the proposed incorporation of [sixty-three] square feet into the first[-]floor deck and the retention of the stairs 19.40 feet from the lot line and [twenty] feet from the bulkhead [line] will not impact the Master Plan, nor the local zoning ordinances, as it is a minimal increase of the deck area and decks are permitted on residential dwellings in [the] Township.
>
> The Board thus concluded that the variance relief can be granted without substantial detriment to the

shall be commenced later than [forty-five] days after the accrual of the right to the review, hearing[,] or relief claimed[.]" These time limitations were "clearly designed to insulate the recipient of a building permit or other favorable disposition from the threat of unrestrained future challenge[,]" Sitkowski v. Zoning Bd. of Adjustment of Borough of Lavallette, 238 N.J. Super. 255, 260 (App. Div. 1990), and run from the date the interested party "knew or should have known of [a building] permit's issuance." Trenkamp v. Burlington, 170 N.J. Super. 251, 268 (Law Div. 1979). Plaintiffs complained to Township zoning officials, orally and in writing, about the DeCiccos' expanded deck exceeding the maximum allowable lot coverage ordinance as early as 2010, yet failed to perfect a timely appeal to challenge the Township's decision.

A-0762-17T1

surrounding properties, notwithstanding the objections interposed by . . . [p]laintiffs. The Board relies upon the findings in [Lang,] a Supreme Court decision that promotion of a desirable visual environment and promotion of safety would promote several purposes of zoning. This is weighed against any potential detriment caused by the grant of the variance. The Board found that the aesthetics would be improved and that a safety issue would be addressed, without substantial detriment to the surrounding properties, including that of . . . [p]laintiffs. This [c]ourt finds substantial evidence in the record to support that conclusion. Given the justified deference this [c]ourt affords to the reasoned decisions of land use boards, there is no basis to set aside this finding.

This appeal followed from Judge Ford's July 19 and August 17, 2017 orders.

On appeal, plaintiffs raise the following arguments for our consideration:

I. THE [TRIAL] COURT ERRED IN GRANTING SUMMARY [JUDGMENT] TO DEFENDANTS ON COUNTS [THREE] AND [FOUR] BECAUSE A MATERIAL DISPUTE IN OP[E]RATIVE FACT STILL EXISTED; THE [TRIAL] COURT MISAPPLIED THE LEGAL STANDARD SET[]FORTH IN [BUBIS]; AND THE [TRIAL] COURT MADE A HARMFUL ERROR IN NOT COMPEL[L]ING THE REMOVAL OF STRUCTURES LOCATED WITHIN THE REQUIRED[ TEN] FOOT SETBACK FROM THE BULK[H]EAD ON THE DECICCO PROPERTY.

A. DEFENDANT DECICCOS FAILED TO SUBMIT A STATEMENT OF MATERIAL FACT IN THEIR MOVING

BRIEF FOR SUMMARY JUDGMENT IN VIOLATION OF [RULE] 4:46-2.[5]

B. DEFENDANTS ARE NOT ENTITLED TO A GRANT OF . . . SUMMARY [JUDGMENT] ON COUNTS [THREE] AND [FOUR] BECAUSE A MATERIAL DISPUTE IN FACT EXISTED AS TO WHETHER OR NOT THE ROW OF TALL TREES, HIGH POSTS, AND FLAGPOLES INSTALLED BY [THE] DECICCOS ALONG THEIR PROPERTY LINE BETWEEN THEMSELVES AND . . . PLAINTIFFS CONSTITUTED A "SPITE FENCE" AS DEFINED IN [BUBIS].

C. THE [TRIAL] COURT ERRED IN ITS LEGAL DETERMINATION THAT [BUBIS] WAS "LIMITED TO THE UNIQUE STRUCTURE PRESENTED IN THAT CASE" AS NEITHER THE CASE ITSELF, NOR ANY OTHER NEW JERSEY COURT, HAS FOUND . . . [BUBIS] TO BE LIMITED TO ITS FACTS.

D. EVEN IF THE [TRIAL] COURT FOUND THE ROW OF TALL TREES, HIGH POSTS, AND FLAGPOLES . . . DID NOT MEET THE LEGAL DEFINITION OF "SPITE FENCE" OR

---

[5] See Cerame v. Twp. Comm. of Middletown, 349 N.J. Super. 486, 488 (App. Div. 2002) (finding that, despite the non-movant's opposition to summary judgment, the procedural deficiency occasioned by the moving party's failure to include the required statement of material facts, R. 4:46-2(a), was not fatal to the motion where "there were no disagreements of fact in the briefs").

A-0762-17T1

"FENCE" AS DEFINED IN [BUBIS], THE [TRIAL] COURT MADE A HARMFUL ERROR IN NOT COMPELLING THE DECICCOS TO REMOVE ANY REMAINING STRUCTURES, INCLUDING THE FLAGPOLE AND POSTS, THAT WERE INSTALLED BY THE DECICCOS WITHIN THE REQUIRED [TEN] FOOT SETBACK FROM THE BULKHEAD.

E.  THE [TRIAL] COURT MADE A HARMFUL ERROR WHEN [IT] INCORRECTLY DETERMINED THAT . . . PLAINTIFFS WITHDREW THEIR OBJECTION TO THE LOCATION OF THE EXISTING FLAGPOLE WHEN THEY DID NOT. INSTEAD, THE PLAINTIFFS WITHDREW THEIR OBJECT[ION] SOLELY TO THE FLAGPOLE THAT WAS REMOVED BY THE DECICCOS IMMEDIATELY BEFORE THE DECICCOS FILED THEIR MOTION FOR SUMMARY JUDGMENT AND NOT TO THE REMAINING FLAGPOLE THAT STILL EXIST[ED] ON THE DECICCO PROPERTY IN VIOLATION [OF] THE [TEN] FOOT REQUIRED SETBACK FROM THE BULKHEAD.[6]

II.  THERE ARE NO FACTS OR LAW THAT AUTHORIZE THE . . . BOARD'S GRANT OF A

---

[6]  We agree with plaintiffs that the judge mistakenly believed they had withdrawn their objection to both flagpoles.  However, because the judge concluded that the flagpoles did not violate the setback requirements in the amended ordinances, this error was of no moment.

A-0762-17T1

BULK VARIANCE TO THE DECICCOS UNDER EITHER A [(C)](1) OR A [(C)](2) VARIANCE NOR SUPPORT THE TRIAL COURT['S] UPHOLDING OF SAID VARIANCE BY ITS DISMISSAL OF COUNTS [ONE] AND [TWO].

A. THERE ARE NO FACTS ON EITHER THE . . . BOARD'S RECORD OR THE TRIAL COURT RECORD THAT WOULD SUPPORT THE [BOARD'S] AUTHORIZATION OF A [(C)](1) "HARDSHIP" VARIANCE, AND THUS ISSUANCE OF A [(C)](1) VARIANCE IS UNLAWFUL.

B. THERE ARE NO FACTS ON EITHER THE . . . BOARD'S RECORD OR THE TRIAL COURT RECORD THAT WOULD SUPPORT [THE BOARD'S] . . . AUTHORIZATION OF A [(C)](2) "FLEX C" VARIANCE, THUS ISSUANCE OF A [(C)](2) VARIANCE IS UNLAWFUL.

C. THE [TRIAL] COURT'S DETERMINATION THAT THE . . . BOARD'S DEFENSE THAT IT IS COLLATERALLY ESTOPPED FROM REVOKING [THE] . . . TOWNSHIP['S] AND RONALD PINGARO'S WRONGFUL ISSUANCE OF A [CO] TO THE DECICCOS BECAUSE IT IS TIME BARRED IS REFUTED BY BOTH FACT AND LAW.

## II.

First, we address plaintiffs' challenge to the judge's summary judgment decision. We review a grant of summary judgment applying the same standard used by the trial court. Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016). See Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995). That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.
>
> [Steinberg, 226 N.J. at 366 (citations omitted) (quoting R. 4:46-2(c)).]

Applying these principles here, we are satisfied that summary judgment was properly granted to defendants on counts three and four of plaintiffs' complaint. Plaintiffs raise the same arguments rejected by Judge Ford in her July 19, 2017 written decision. We too reject plaintiffs' arguments and affirm substantially for the reasons articulated in the judge's comprehensive and well-reasoned decision.

A-0762-17T1

Turning to plaintiffs' challenge to the entry of judgment against them and dismissal of their complaint, we first address the standard of review that informs our consideration of zoning decisions. Municipal zoning boards are allowed wide latitude in their delegated discretion because of their particular knowledge of local conditions. Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005). Thus, the scope of judicial review is limited to determining whether a zoning board could reasonably have reached its decision on the record, not whether a better decision could have been made by that board. Ibid. To that end, neither the trial court nor this court may substitute its judgment for that of the zoning board. Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 561 (App. Div. 2004).

Although greater deference is given to variance denials, Med. Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment, 343 N.J. Super. 177, 199 (App. Div. 2001), there is a presumption that there was an adequate basis in the record for a zoning board's conclusions, Lang, 160 N.J. at 58, and the party challenging the board's decision bears the burden of overcoming this presumption of validity. Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, W. Windsor Twp., 172 N.J. 75, 81 (2002). Whether a variance applicant has successfully met the relevant statutory criteria is "entrusted to the sound

27

discretion of the municipal boards," <u>Kaufmann v. Planning Bd. for Twp. of Warren</u>, 110 N.J. 551, 558 (1988), and "courts ordinarily should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." <u>Lang</u>, 160 N.J. at 58-59.

Thus, in reviewing a zoning board's decision on a variance application, a trial court determines whether the board's decision was arbitrary, capricious, unreasonable, or constitutes a manifest abuse of its discretionary authority. <u>See</u> <u>Jock</u>, 184 N.J. at 597; <u>Fallone Props.</u>, 369 N.J. Super. at 560. Even where the court doubts the outcome, it cannot declare the board's action invalid absent a clear abuse of discretion. <u>Kramer v. Bd. of Adjustment, Sea Girt</u>, 45 N.J. 268, 296-97 (1965). However, determinations of law are subject to de novo review by the trial court. <u>Fallone Props.</u>, 369 N.J. Super. at 561. In turn, we apply the same standard of review as the trial court. <u>N.Y. SMSA, L.P. v. Bd. of Adjustment of Weehawken</u>, 370 N.J. Super. 319, 331 (App. Div. 2004). We "will give substantial deference to findings of facts, and will overturn discretionary rulings only if arbitrary and capricious." Cox & Koenig, <u>New Jersey Zoning and Land Use Administration</u>, § 40-6 (Gann 2019). We owe no special deference, however, to the trial court's interpretation of the law and the

legal consequences that flow from established facts.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

A (c)(1) variance requires a demonstration of hardship due to the physical characteristics of the lot, the so-called positive criteria.  N.J.S.A. 40:55D-70(c)(1); Chicalese v. Monroe Twp. Planning Bd., 334 N.J. Super. 413, 426-27 (Law Div. 2000).  The hardship criteria of a (c)(1) variance is unaffected by personal hardship, Lang, 160 N.J. at 53, but "financial hardship is not irrelevant when determining whether a variance grant is warranted."  Cohen, 396 N.J. Super. at 619 (citing Hawrylo v. Bd. of Adj. of Harding Twp., 249 N.J. Super. 568, 581 (App. Div. 1991)).  The focus is "whether the strict enforcement of the ordinance would cause undue hardship because of the unique or exceptional conditions of the specific property."  Lang, 160 N.J. at 53.

However, a (c)(1) variance does not require a demonstration that the claimed hardship would result in the inability to make any use of the property. Kaufmann, 110 N.J. at 562 (quoting Davis Enters. v. Karpf, 105 N.J. 476, 493 (1987) (Stein, J., concurring)).  Rather, the burden on the applicant is only to demonstrate that it may "inhibit the extent to which the property can be used." Ibid. (quoting Davis Enters., 105 N.J. at 493 (Stein, J., concurring)); see Lang, 160 N.J. at 54 (noting an applicant seeking a (c)(1) variance need not prove "that

without the variance the property would be zoned into inutility"). Moreover, the analysis for a (c)(1) variance is not properly predicated on whether the applicant could have constructed a conforming structure. Lang, 160 N.J. at 55. Instead, the focus should be on whether the narrowness of the lot required the setback and building coverage variances sought by the applicant. Id. at 56.

In contrast, a (c)(2) variance, often referred to as the flexible (c) variance, allows departure from the zoning requirement when application of the zone plan is not advanced and the benefits of the deviation substantially outweigh any detriment due to the physical characteristics of the property. N.J.S.A. 40:55D-70(c)(2); Kaufmann, 110 N.J. at 553. A (c)(2) variance is not justified when "merely the purposes of the owner will be advanced." Kaufmann, 110 N.J. at 563. Rather, the community must actually receive a benefit due to the fact that the variance represents a better zoning alternative for the property. Ibid. Thus, the focus of the (c)(2) positive criteria is on the characteristics of the land that present an opportunity for improved zoning and planning for the benefit of the community. Ibid. While zoning boards are required to effectuate the goals of the community's zoning and planning ordinances, id. at 564, "[t]he Legislature undoubtedly intended through the [(c)](2) variance to vest a larger measure of discretion in local boards in a limited area of cases." Id. at 566.

In addition to the positive criteria, an applicant for either a (c)(1) or a (c)(2) variance must also satisfy the negative criteria required under N.J.S.A. 40:55D-70(d): "[T]hat such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." The negative criteria focuses on the impact that the variance will have on the specific adjacent properties affected by the deviations from the ordinance, Lang, 160 N.J. at 57, as well as any detriment to the zoning plan. Kaufmann, 110 N.J. at 565. Undoubtedly, the applicant bears the burden of establishing the existence of both the positive and negative criteria. Betts v. Bd. of Adjustment of Linden, 72 N.J. Super. 213, 217 (App. Div. 1962).

Here, the judge determined there was substantial credible evidence in the record to support the Board's decision to grant either a (c)(1) or a (c)(2) variance. In entering judgment in favor of defendants, Judge Ford addressed and rejected each of plaintiffs' contrary arguments. Likewise, we reject plaintiffs' arguments and affirm substantially for the reasons stated in Judge Ford's August 17, 2017 written opinion. Plaintiffs' arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0762-17T1